| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:05-CV-2191 (CEJ) |
| | ) | |
| TIMBER INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion for default judgment against defendant Timber Industries, Inc., pursuant to Rule 55(b)(2), Fed.R.Civ.P. The Clerk of Court entered default on April 10, 2006.

The United States of America brings this action against defendant Timber Industries, Inc., asserting a claim pursuant to §§ 3008(a) and (c) of the Resource Conservation and Recovery Act of 1976, as amended by the Solid Waste Disposal Act Amendments of 1980 and the Hazardous and Solid Waste Amendments of 1984 (RCRA), 42 U.S.C. §§ 6928(a) and (c). Plaintiff alleges that defendant improperly disposed of the hazardous wastes pentachlorophenol (PCP) and dioxin at its wood treatment facility. Plaintiff also alleges that defendant failed to comply with the terms of an Expedited Settlement Agreement the parties signed in 2002 after PCP and dioxin were first detected at the facility. Defendant failed to answer the complaint.

## I. Facts

Defendant owns and operates a wood treatment facility in Salem, Missouri. Defendant began operation in 1979 and purchased

the facility in 1983. Throughout its operation, the facility has generated hazardous wastes regulated by RCRA, including PCP and dioxin. Hazardous wastes and hazardous components have contaminated soil and surface water.

On November 14, 2002, defendant entered into an Expedited Settlement Agreement with the United States Environmental Protection Agency (EPA). Upon entering the Agreement, defendant agreed not to contest the jurisdiction of the EPA. Defendant also agreed that it is subject to the requirements of Section 2005 of RCRA, 42 U.S.C. § 6925, and § 260.390.1.(1), Mo. Rev. Stat., and that it was in violation of those requirements. Pursuant to the terms of the Agreement, defendant agreed to undertake the following actions in order to return to compliance with hazardous waste laws and regulations: (1) create and submit a Site Characterization Work Plan and Report; (2) create and submit a Clean-up Action Work Plan and Report; (3) submit a certification and detailed description of changes made to bring operations into compliance with hazardous waste laws; (4) submit a certification of a detailed hazardous waste determination on all solid waste streams generated by defendant; (5) submit a certification of a determination of the facility's generator status based on the amount of hazardous waste generated in a calendar month or accumulated on-site at any time; (6) manage all wastes in accordance with the facility's generator status; (7) submit documentation showing that the facility was registered as a hazardous waste generator with the Missouri Department of Natural Resources; (8) ship off-site all hazardous

wastes stored at the facility in excess of the time allowed based on defendant's generator status; (9) submit copies of all manifests and Land Disposal Restriction notice forms related to such shipments; and (10) submit a certification and detailed description of actions taken to conduct facility operations in compliance with various hazardous waste regulations.

On December 6, 2000, Trevor Urban, an environmental scientist with the EPA, conducted an inspection conducted at Timber Industries, Inc. Leslie Allen Curley, president of defendant, was present for the inspection and signed the Notice of Violation.

According to the inspection report, defendant treats pine fence posts and oak and pine lumber with a solution of PCP and diesel fuel. Trams loaded with untreated wood products are wheeled into a treatment tank. The PCP solution is introduced into the sealed tank to treat the wood and is drained into storage tanks when the treatment is complete. The loaded tram remains in the treatment tank until dripping ceases. The treated wood is then moved to a concrete pad in the staging area or to the storage yard. During his inspection, Mr. Urban found that PCP solution dripped onto the ground near the treatment tank and in the staging area. PCP was also detected on the ground below an exhaust pipe. No PCP was detected in drinking water wells on the property or in soil in the storm water run-off drainage area. Defendant was also cited for improper disposal of protective gloves and metal banding used to secure wood to the tram.

On October 29, 2002, Mr. Curley signed the Expedited Settlement Agreement on behalf of defendant. The Agreement imposed no penalty, based upon defendant's inability to pay. However, defendant was required to undertake specific measures to stop all releases of PCP into the environment and to submit compliance documentation.

Plaintiff submits the declaration of Elizabeth A. Koesterer, an environmental engineer with the EPA, to whom defendant was required to send compliance documentation. She states that defendant failed to: (1) immediately cease all releases; (2) make hazardous waste determinations on all solid waste streams; (3) submit Land Disposal Restriction notices to the EPA; (4) submit copies of manifests for all shipments of wastes between November 2002 and November 2003; (4) submit a certification of its treatment operations; (5) submit a Site Characterization Work Plan and Report; and (6) submit a Clean-up Action Work Plan and Report. At Ms. Koesterer's request, Mr. Urban reinspected defendant's facility on May 3, 2005. Ms. Koesterer states that the inspection indicated that the prior discharges were not remediated and that new areas of illegal disposal of were found.

**III. Discussion**

Plaintiff alleges that defendant has failed to comply with several terms of the agreement. Plaintiff seeks civil penalties in the amount of $225,669.00 and injunctive relief directing defendant to comply with the requirements of the Expedited Settlement Agreement.

The parties entered the Expedited Settlement Agreement under the authority vested in the Administrator of the EPA by 42 U.S.C. § 6928. By signing the Expedited Settlement Agreement, defendant agreed that it was a generator of hazardous waste and was subject to the jurisdiction of the EPA. After a determination that a person has violated RCRA, the Administrator of the EPA may issue an order assessing a civil penalty and requiring compliance with the Act immediately or within a specified period. § 6928(a). If a violator fails to take corrective action within the time specified, the Administrator may assess a civil penalty for each day of noncompliance. § 6928(c); 40 C.F.R. § 19.4 (setting daily penalty at no more than $27,500.00 for violations occurring on or before March 15, 2004, and at $32,500.00 for violations occurring after March 15, 2004). The Administrator may commence a civil action in the United States district court in the district in which the violation occurred for appropriate relief, including a temporary or permanent injunction. § 6928(a). By virtue of its default, defendant has admitted its liability under RCRA and exposed itself to civil penalties under § 6928(c) and is subject to injunction under § 6928(a).

Ms. Koesterer completed plaintiff's penalty calculation. She states that in calculating penalties for violations of RCRA, the EPA takes into account the following factors: the gravity of the violation; the duration of the violation; and factors related to the violator, including good faith efforts to comply with the law,

willfulness or negligence, history of noncompliance, and ability to pay.

In calculating the gravity of the violation, Ms. Koesterer examined the extent to which defendant deviated from legal requirements and the potential for harm to the environment and human health. Ms. Koesterer determined that the gravity was "moderate." Given that defendant is a small business and the waste is still subject to remediation, Ms. Koesterer selected a gravity-based penalty from the low end of the matrix, or $5,500.

Ms. Koesterer next determined that defendant was in violation of the compliance order for a total 593 days.[1] She then selected a daily penalty of $275.00, the lowest penalty available for an offense of moderate gravity. The multi-day component of the penalty thus is $163,075.00. When added to the gravity-based penalty, the baseline penalty is $168,575.00.

Ms. Koesterer next considered upward and downward adjustments to the baseline penalty. She determined that no upward or downward adjustment was warranted based upon defendant's limited efforts to comply with the Agreement. In considering whether defendant's conduct was willful or negligent, Ms. Koesterer noted that the requirements of the Agreement were clear, that defendant's president had full control over the events constituting the

---

[1]Ms. Koesterer determined that, pursuant to the Settlement Agreement, the first major documentation was due on February 14, 2003. She designated September 20, 2004, as the date defendant came into compliance, although she acknowledges that defendant actually remains in noncompliance. 593 days elapsed between the two dates.

violation and over ensuring compliance with the Agreement, and that defendant ignored several contacts by phone and letter and did not respond to the complaint. Ms. Koesterer thus determined that defendant's noncompliance was willful and imposed the maximum upward adjustment of 25%, resulting in the addition of $42,144.00 to the baseline penalty. Defendant did not have prior enforcement actions and so no adjustment was made for a history of noncompliance and the EPA will not decrease a penalty for inability to pay where the violator refuses to correct a serious violation. Finally, Ms. Koesterer determined that defendant reaped an economic benefit in the amount of $14,950.00, by failing to undertake the remediations required by the Settlement Agreement. The total of all components of the penalty thus is $225,669.00.

Plaintiff is also entitled, pursuant to § 6928(a), to injunctive relief directing defendant to perform those items of the Expedited Settlement Agreement not yet completed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for default judgment [#5] is **granted**.

A judgment in accordance with this Memorandum and Order will be separately entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE


Dated this 3rd day of May, 2006.

- 7 -